May it please the Court. Good morning, Your Honors. May I request two minutes for rebuttal? Yes, you may have it. This Court can and should prevent the extradition of Alexander Hilton in the exceptional circumstances presented by this case. The facts in this case are undisputed. Everyone agrees, including the lower courts and the government, that Mr. Hilton is very sick, highly suicidal, and cannot receive adequate care and treatment in federal custody. If extradition is allowed under these circumstances, Mr. Hilton will be deprived of his substantive due process rights. By statute, in the extradition statute itself, once the habeas proceedings are over and if they're decided adversely against my client, the magistrate will be required to issue a certification of extradition and will also be required to issue an order of commitment requiring Mr. Hilton to be put in jail awaiting surrender. Unlike a domestic criminal case, under these circumstances, once the habeas proceedings are over, no extra provision allowed, effectively no meaningful court oversight. So this appeal is Mr. Hilton's last chance for court review. Once Mr. Hilton is in custody, there will be a special relationship between him and the government and the due process clause then imposes a duty of care to ensure his safety. The government cannot comply with this duty. They have actual knowledge of Mr. Hilton's mental health situation and his suicide risk, but they've conceded that they cannot provide adequate care for him. The overwhelming psychiatric evidence in this case is that if the government removes Mr. Hilton from his current treatment, they remove him from the treatment of his psychologists and his psychiatrists, they remove the seven medications that he's taking from him, and they remove him from the support of his family, particularly his mother, who's his primary caretaker and who is suffering from cancer right now and cannot travel with him. Ms. Shaw, let's assume a hypothetical that someone exactly like your client killed someone today, and wouldn't they have to go to trial, and if convicted, go to jail? They would not stay home. In this country? Yes. If convicted, yes, but in this case, Mr. Hilton has not been convicted of any crime. This is an extradition proceeding, which is completely different. Well, suppose they were caught standing over the body with a gun in their hand. Wouldn't they be taken into custody? If they were taken into custody in this country, the court system would be able to provide bail if the person was not a bail risk. The court system would have some oversight. In these particular circumstances, because it's an extradition proceeding, under the statute, once Mr. Hilton is certified for extradition, the statute specifically says that he must be committed to jail to await surrender by the Secretary of State, and so at that point, I don't believe the court has oversight. And I read your brief as focusing not on the extradition, but focusing on the intervening period between when the court would make its certification and he would get on the plane. Do you have a case, in other words, if the facts were that there would be no intervening time, he would be taking from the plane to Scotland, then is there any basis for refusing the certification? I believe there is a basis based on the uncontested psychiatric evidence in this case. In this case, Dr. Edersheim, who's our expert, has concluded that the interruption in care to Mr. Hilton and the fact that there will be a delay in the care that would be received on the other side, during that intervening period, Mr. Hilton's psychiatric state will decline considerably and create an increased risk of suicide. But that, how can we take, and you're talking about how he would be treated in Scotland. I'm talking about the harm that would occur by depriving him of his treatment here, and that harm is committed by the government of the United States, not by Scotland, and because he carries, Mr. Hilton carries with him the condition of his mental illness. This is not a case of torture, this is not a case where the harm is committed by other parties on the other side. Mr. Hilton carries with him the condition, and once the government removes whatever is keeping him stable here, which is his expert psychiatric care, the care that his family is giving him, which is basically providing for his basic daily needs and keeping him stable and functional, and his medications, seven medications, which require extensive monitoring by his psychiatrist here in the U.S. Once the government takes that away, it puts him in a position where he completely destabilizes. It's like pulling the pin from a grenade and waiting for it to explode. It could explode here, it could explode there, it doesn't matter where it actual harm, and we submit that that is a due process violation, and because it's committed by the U.S. government, it's not precluded by the rule of non-inquiry. And with that point, specifically, if the court feels that Scottish conduct is at issue here, I would submit that the Galena exception should apply. In Galena, the Second Circuit recognizes that the rule of non-inquiry may have to be revisited if the practice is so antipathetic to the court's sense of decency. In this case, the Scottish government is represented by the United States and has made no representations about the level of care that Mr. Hilton will receive when he gets over there. It has said nothing whatsoever about that. I would submit that the U.S. government is represented by the U.S. and has made no representations about the level of care that Mr. Hilton will receive when he gets over there. In Galena, the Second Circuit recognizes that the rule of non-  may have to be revised. In Galena, the Scottish government is represented by the U.S. and has made no representations about the level of care that Mr. Hilton will receive when he gets over there. The certificate was issued May 17, 2013. This habeas proceeding has taken more than a year, including extensions given to you personally. Now, what efforts have you made to be in touch with the Secretary of State and try to present these petitions to the Secretary? We submitted a petition to the Secretary of State in November of 2013. All we have heard back, we asked for a meeting with a representative of the State Department. We never received a response about that. All we have heard back is that they have received our petition. That is all. And our understanding from the government is... What did you ask for in that certification petition? We asked... Would he never be returned to Scotland to stand trial? We asked that he, that extradition be barred based on his mental health condition, yes. So he never gets prosecuted? Based on his current condition, that's what we asked for. But we also asked for a hearing with the representative there to ensure that we could have a discussion about this, and we have not heard back. And there is no obligation for the Secretary of State to review the petition at all. It could surrender Mr. Hilton without reviewing the petition, and there is no court review of the Secretary's determination to surrender. So this is our last chance, and I would urge the court to grant... You have reserved some time. Yes, thank you. Thank you. May it please the Court. The Court below found in this matter that there was probable cause to believe that Mr. Hilton attempted to murder Robert Forbes. I think the record also fairly establishes, to the Court's point, that but for good fortune, Mr. Forbes would be dead, and Mr. Hilton would be charged with murder. Notwithstanding that, the Court below also found that there is a valid and applicable extradition treaty in place. Neither of those findings, either the findings that there is a valid and applicable treaty, are challenged in this appeal. Therefore, the Court should affirm the District Court's denial of the petition. In short, Mr. Hilton's mental illness provides him no constitutional right to be left alone. But hold it. You are proposing not just to extradite him, as I understand it, but to also take him into pre-expedition, extradition detention. That, of course, is necessary when somebody doesn't voluntarily surrender. So we're forced to take action, and that's the action we'll take. And the Magistrate found that, somewhat to my surprise, but found that the U.S. Government has no pre-extradition or pre-trial detention facility that can safely house this individual, and you put in zero evidence to the contrary. So given that finding, how does the U.S. Government take custody of him at a time when the finding is that it cannot care for him? Well, I want to be precise as to what the finding was, because what Mr. Hilton's claim is, essentially, is that he will inevitably commit suicide if taken into custody, and there's nothing that the government can do to prevent it. Throughout this proceeding, I think the court below has been judicious and careful in trying to find Mr. Hilton the best circumstances possible as this process went forward. But what the Magistrate, in fact, found was, at the hearing in this matter, the government conceded that inpatient, and this was on the motion for detention, inpatient hospitalization at a mental health facility may be appropriate in this case. However, there are no federal secure mental health facilities for pre-trial detainees where Hilton could be housed and treated. That does not say he couldn't be safely in a mental health facility. There won't be efforts, substantial efforts, made to address his mental illness, to care for his mental illness. Will it be as good as the circumstances on bail? I doubt that it will be, but I don't think that there's any basis in the record to say that the Marshals or the Secretary of State won't make every effort to stop, to stop his mental illness. To make him safe and to carry out their constitutional obligations. Stay with that for a second. A person says they have kidney failure, so they have to have daily dialysis treatment. And they put in an affidavit saying the federal detention facility has no dialysis machines at all, so I will die there. And you put in no evidence that the federal detention facility has a dialysis machine. Doesn't there need to be some factual finding by the court that you can take him into detention and he won't die the next day because of a lack of a dialysis machine? What would we do with a record like that? That's an interesting question, but in fact that's not the case here, number one. Well, it's not dialysis. Mr. Hilton has been in custody for nine days and he didn't commit suicide. And what he did do was attempt with his fingernails to cut his wrists and his neck. The problem, I think, with his record is that Mr. Hilton is challenging extradition. And in the matter below, he never cited the deliberate indifference test. He never said, oh, well, the government can't possibly do anything to, he said, Mr. Hilton's mental health and his risk of suicide prevent extradition. And, in fact, when the stay was being argued and the government offered in the case of in having no stay, the government said, well, we would like the extradition to go forward because that's what the government interest is, moving this along expeditiously, in exchange we would offer that Mr. Hilton stay out on bail pending the secretary's decision. And that was not sufficient for Mr. Hilton. So we are put, the government is put in the position where the only way to extradite Mr. Hilton is to take him into custody. I think that there is a record that there have been efforts while he was in custody to address his mental health concerns and that there is no basis to find what is really a remarkable claim on Mr. Hilton's part that he cannot be taken into custody without violating his constitutional rights. I think that that would be a remarkable claim. To follow up, it would seem to be a common sense assumption that other pre-trial detainees have presented a problem of being suicidal and of claiming that they will get inadequate treatment in their pre-trial detention. I assume that the government faces that type of problem rather frequently. What does the government do in those circumstances? Well, I mean, the government does what... You were asked a very simple question about, so what steps can you take to assure that no harm will be done here? Your answer seems to have been, well, look at what we've done. Thus far, we've agreed on bail on conditions that let him stay home and get treatment. Well, I mean, I think there are a number of things we can do and there are a number of things we plan to do. That is, ask the defendant, ask Mr. Hilton's counsel for what his treatment regimen is, what his precise medications are, who he's being seen by, and the nature of the treatment that he's getting, so that we assure that as close as possible he gets those same conditions. The second question is this. I'm sorry if I interrupt you, but we get your points. The second question is, you just said that the bail extends until the secretary makes his decision. Is that accurate? No, I said that that's what we offered. In connection with the litigation of the stay before District Judge Hillman. In other words, he was considering the defendant's, Mr. Hilton's motion for a stay pending appeal. That would not be the case. It would not be the case. If the certification issues, the secretary has the authority to take Mr. Hilton into custody at that point. While she is considering. Yes. Okay. And so the complaint really is a sort of hypothetical future complaint about what the secretary might do or might not do to address the suicidality of the detainee. Yes. All right. It would just have helped us a lot if you'd put something in the record that says, here's how we'll care and we can care for this person. Because as the Chief Judge just said, you must have pretension facilities somewhere for caring for severely mentally ill people. Well, I suppose it would have helped. I suppose it would have also helped if that claim had been precisely raised below, number one. But number two is, I do think that that's a prospective claim. I mean, the claim is, I mean, this is an extradition proceeding. The issues are tightly limited. I think under the rule of non-inquiry, those matters are for the secretary to determine. And I think that this, the litigation, I don't, to the extent that it is addressing these issues, I don't think it distracts from the fundamental issue, which are, is there a valid treaty and is there a probable cause? I mean, the deliberate indifference test applies to post-suicide claims. I haven't seen it applied prospectively. I would like some assurance that the government has an interest in keeping him safe and not merely in defending itself after a suicide. Well, but the government has that interest in every case. And I think that you're assuming that the... Well, ironically, there was no evidence of that presented here. I'd like to address several points. First, with regard to the psychiatric evidence related to how he was treated while he was in custody at Wyatt, the uncontested psychiatric... No, he's still under government control. As, partly with the government's involvement, he has been kept safe over the last year. And you give them sort of no credit for that. Well, at least while he's been, while he was in custody, he was not kept safe. He was only taken off of suicide watch after Magistrate Judge Bull intervened and issued a court order allowing him to see a psychologist. The prison facility would not let him see a psychologist. And since then, we have provided the government with a list of his medications and requests for treatment after being taken into custody and have received no assurances that the marshals will be able to provide those medications. And, in fact, I'm happy to update the record with our communications. Those are discussions that should be going on between the parties. And I urge you to accelerate them because we have to decide this case. I'd like to address the psychiatric evidence, though, which is that Dr. Ettersheim stated very clearly during her testimony that the suicide prevention was not sufficient, was not adequate care for Mr. Hilton in the state that he was in at the time. It actually caused further deterioration for the first time. And it's inevitable after a year of treatment that if he's put in prison or put in some detention facility that exactly the same thing will happen, even if he's given access to a psychiatrist and access to drugs? If he's given... You haven't proven that. We have not, but we don't know that he will be able to get access to those. And thus far, based on the government's conduct, we believe that he will not get access to those. And with regard to the agreement on bail, the government wouldn't agree to a stay and couldn't assure the court that they would not pick Mr. Hilton up and surrender him to Scotland in the interim. And that is why we couldn't agree to the proposal that the government had offered at that time. Again, I urge the court to grant relief in this situation. Thank you. You told the district court that Mr. Hilton's mother would be unable to travel through the spring of this year. Is that representation still apt? Currently, we're trying to get some updated opinions from her doctors. Our understanding is that she cannot travel currently. She still needs to be in treatment, physical therapy once a week for complications from her chemotherapy and radiation. And her follow-up appointment with her oncologist is in July. And that is when a determination will be made as to whether she will have further complications, whether the cancer is metastasized is going to be determined at that point. But we will update the court as soon as we are able to with that information. Thank you. Thank you.